**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SELECT RETRIEVAL, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 11 C 03752 |
| ABT ELECTRONICS, *et al.*, | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADOBE SYSTEMS, INC., | ) | |
| | ) | |
| Prospective Intervenor Defendant | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this lawsuit—one among many pending around the country against different businesses—patent owner Select Retrieval, LLC, alleges that the defendants are infringing its U.S. Patent No. 6,128,617 ("the '617 Patent") and that infringement by certain defendants is willful. The Second Amended Complaint ("complaint") lists at least one online retail website used by each defendant that, according to Select Retrieval, embodies the technological processes claimed in the '617 Patent. The two remaining defendants have not yet answered the complaint.

Non-party Adobe Systems has moved to intervene in this action for the purpose of requesting a stay of the case against the two defendants, who are its customers. Adobe developed, and sold to the defendants, digital marketing software that enabled certain search functionalities for the defendants' online stores. The customers have notified Adobe that its technology is the source of the alleged infringement.

Adobe's requested stay would be for purposes of allowing a later-filed lawsuit to proceed to judgment first. Specifically, Adobe filed a declaratory judgment action against Select Retrieval in the Southern District of California (Case No. 3:12-cv-2342) to obtain a ruling on whether technology sold by Adobe violates the '617 patent. In Adobe's view, litigating that issue to judgment is a more efficient way of assessing the validity of the patent than Select Retrieval's chosen course of suing end users such as Adobe's customers for specific acts of infringement in various lawsuits across the nation. Adobe contends that it is entitled to intervention of right, *see* Fed. R. Civ. P. 24(a), and that in any case this Court should allow permissive intervention, *see* Fed. R. Civ. P. 24(b).

For the reasons explained below, the Court grants Adobe's motions to intervene and to stay this case pending the outcome of the declaratory judgment action.

## DISCUSSION

### I.       Motion to Intervene

Except where there is an unconditional statutory right to intervene—not present here—intervention of right is limited to cases in which the movant claims an interest relating to the property or transaction that is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the existing parties adequately represent that interest. *See* Fed. R. Civ. P. 24(a)(2); 7C Charles Alan Wright, Arthur R. Miller, et al. *Fed. Prac. & Proc. Civ.* § 1908 (3d ed.) Permissive intervention, on the other hand, is discretionary, and may be allowed when the proposed intervenor demonstrates that there is (1) a common question of law or fact, and (2) independent jurisdiction. Fed. R. Civ. P. 24(b)(2); *Security Ins. Co. of Hartford v. Schipporeit, Inc*., 69 F.3d 1377, 1381 (7th Cir. 1995).

A.      **Timeliness**

No matter the type of intervention sought, the request must be timely. *See Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 701 (7th Cir.2003). Here, Select Retrieval contends that Adobe's motion came too late. Select Retrieval sued in June 2011, and Adobe's motion was filed in November 2012. Adobe was aware of the litigation from the outset, having been informed of Select Retrieval's infringement claim by its customers in connection with their requests for indemnification. But the length of time that an intervenor knew or should have known about a case is but one of several factors for the Court to consider. The others are prejudice to the original parties, prejudice to the intervenor if the motion is denied, and any unusual circumstances. *See Sokaogon Chippewa Cmty. v. Babbitt,* 214 F.3d 941, 949 (7th Cir. 2000). Select Retrieval refers to, but does not describe, "prejudice" that would ensue from Adobe's intervention at this time. The Court sees no possible prejudice. As far as the record shows, Select Retrieval has not prosecuted this case—apart from voluntarily dismissing some defendants—since Adobe filed its motion. Shortly after the case was reassigned to this Court in June 2012, Select Retrieval moved to stay the case pending a ruling on an uncontested motion to transfer the case to a multidistrict litigation. The Court granted the motion. (Dkt. # 175.)  In November 2012, the parties filed a status report that indicated that the MDL transfer had been denied months earlier. But Select Retrieval had not moved to lift the stay, and did not do so, even after additional months passed. None of the defendants have answered, and no discovery has taken place, but Select Retrieval did not move for any relief. It is difficult to imagine what prejudice Select Retrieval might face under these circumstances, content as it has been for the case to remain, in effect, stayed during the pendency of Adobe's motions. On the other hand, denying

the motion to intervene on timeliness grounds obviously could result in prejudice to Adobe, which, as explained below, had a substantial interest in the outcome of this litigation.

Moreover, the timeline shows that Adobe moved to intervene not long after the MDL transfer was denied in August 2012; the Court sees nothing dilatory about waiting to see where the case would be litigated before moving to intervene. Given the status of the case, the motion was filed within a reasonable amount of time. *See Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995). Accordingly, the Court will not deny intervention on timeliness grounds.

### B. Intervention of Right

"Intervention of right requires a 'direct, significant[,] and legally protectable' interest in the question at issue in the lawsuit," and that interest "must be unique to the proposed intervenor." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013) (citation omitted). This a fact-specific inquiry into whether the movant has something more than a mere "betting interest" but less than a property right—what is called a "significantly protectable interest." *Security Ins. Co*., 69 F.3d at 1381.

Here, Adobe has a protectable interest in the issue at stake in this lawsuit; that is, whether its customers, are using technology obtained from Adobe as directed by Adobe and infringing the '617 patent as result. It cannot be reasonably disputed that Adobe's interest in determining whether its customers are infringing the patent for using the technology as directed is substantial. Moreover, Adobe has now supplemented the record with a statement that it has agreed to "defend and indemnify it customers in this matter." Dkt. # 242. Therefore, it also has a direct financial stake in the outcome of the case. Moreover, Adobe's indemnification of its customers obviates Select Retrieval's only argument against the existence of a significantly protectable

interest: that Adobe lacks a binding legal obligation to its customers as to the subject patent. The Court needn't address that argument any further.

Intervention of right also requires that the disposition of the case could impair or impede the movant's ability to protect its interest. Select Retrieval contends that this is impossible because a finding of infringement by any of Adobe's customers would not have preclusive effect as to its other customers in other cases. But this fact supports, rather than detracts from, Adobe's request to intervene. It underscores that Adobe (through its customers) would be subject to potentially inconsistent judgments regarding whether its technology infringes the patent. Without intervening in this case, Adobe's ability to defend its technology could be compromised. And both Select Retrieval and Adobe would be forced to proceed inefficiently in piecemeal fashion, even though the same technology (albeit not solely Adobe's technology) is at issue in the various cases.

The next requirement is that the intervenor's interest is not protected adequately by the existing parties—here, the defendant customers. Select Retrieval contends that Adobe's interests are identical to the customers' and therefore adequately protected; Adobe disagrees. Inadequate representation is a "minimal" showing, but a presumption exists that when a prospective intervenor and a named party have the same goal, the party adequately represents the interest of the intervenor. *See WEAC*, 705 F.3d at 658-59. Here, Adobe and its customers share the goal of defeating the infringement claims, whether by challenging the patent ownership or showing that they are not infringing. But, as Adobe argues, their interests are not identical even though they would all advocate the same outcome. Adobe is concerned with its technology across its customer base, and obviously has much more to lose (or gain) from a a ruling, either way, as to the infringement claim. The customers' interests are limited to defeating the claim as to their

own use, and they lack the same incentive to establish that Adobe's technology itself does not infringe a valid patent, particularly where they are indemnified as to the claim asserted. The customers also lack the same understanding of the underlying technology; Adobe is in a superior position to defend the products it developed. Moreover, now that the customers are indemnified, their stake in the outcome—and arguably their incentive to mount a vigorous defense—is lessened. Therefore, although the customers' interests are not inconsistent with Adobe's, they are not adequate representatives of Adobe's position in the larger fight being waged nationwide between it and Select Retrieval.

Because all the requirement of Rule 24(a)(2) are met, Adobe's motion to intervene as of right is granted.

### C.    Permissive Intervention

Even if intervention of right were not proper here, the Court would allow permissive intervention. Here, Adobe's claim and the main action share common issues of law or fact—that is, whether the technology used by the defendants infringes the '617 patent. The issues are not identical; for example, Adobe is apparently not the sole source of the allegedly infringing technology. But the common issues of fact and law predominate. Furthermore, Select Retrieval does not argue that independent jurisdiction is lacking, and it is clear that the federal courts have subject matter jurisdiction over a claim of patent infringement (or a declaration of non-infringement, such as the one sought by Adobe in the Southern District of California).

Select Retrieval's undeveloped argument against permissive intervention is that Adobe's motion "is not timely, would prejudice Select Retrieval, and would unduly delay this lawsuit." Mem., Dkt. # 221 at 7.   As already discussed, the Court finds that the motion is timely. Moreover, there is no obvious prejudice to Select Retrieval, even if proceedings are slowed

somewhat. Having gone for more than a year without moving for a lift of the previous stay entered by this Court, Select Retrieval is hard-pressed to contend that undue delay is of great concern. Therefore, even if Adobe could not properly intervene by right, this Court would allow permissive intervention.

## II.     Motion to Stay

Having concluded that Adobe may intervene in this case, the Court must now decide its motion to stay the litigation pending the outcome of the declaratory judgment action in the Southern District of California. Adobe argues that a stay is prudent because adjudicating the issues between the manufacturer (Adobe) and the patent holder will streamline the issues and prevent duplicative, piecemeal litigation against Adobe's customers in multiple infringement suits. Select Retrieval objects to a stay, arguing that a stay would not produce an efficiency gains but would prejudice Select Retrieval by slowing down the judicial process and delaying needed discovery on the infringement claims.

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *See Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). "The power to order that proceedings be stayed to abide proceedings in another court is not limited to situations where the parties to the two causes are the same and the issues identical." *Radio Corporation of America v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1955) (further explaining that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). In deciding whether to stay an action, courts should consider: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in

7

question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer, Inc. v. Apotex, Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D.Ill.2009). The federal trial courts have a duty to prevent duplicative litigation in separate districts. *See id*.

Considering the totality of factors that weigh on the ultimate goals of promoting efficiency and preventing prejudice, the Court concludes that a stay is appropriate. Although Select Retrieval argues otherwise, a stay will simplify the issues in this case. Select Retrieval simply does not offer any explanation why an adjudication of the validity of its '617 patent—an issue that is currently front-and-center in the Southern District of California—will have no effect here. *See, e.g,*, *Select Retrieval, LLC v. L.L. Bean, Inc.*, No. 12 C 0003, 2013 WL 1099754, at * 5 (D. Me. 2013) (explaining, in parallel case: "The outcome of the California Suit would resolve the major issues concerning the claims against L.L. Bean. Furthermore, Adobe's agreement to indemnify L.L. Bean obviates any need for L.L. Bean to agree to be bound by the California Suit. It will be Adobe that is on the hook if Adobe's technology—as used by L.L. Bean—is found to infringe Select Retrieval's patent. Even if L.L. Bean's use of the allegedly patented technology independently infringes the '617 Patent, the resolution of the California Suit would still greatly simplify this case.").

Furthermore, a stay will not unduly prejudice Select Retrieval. The only prejudice Select Retrieval cites is a delay in discovery; however, the Court has already noted that Select Retrieval did not move to lift the earlier stay imposed by the Court although there was apparently a decision on transfer to MDL long ago. More importantly, Select Retrieval allowed the declaratory judgment action to proceed—never seeking a stay or abstention, although it had several earlier-filed cases on which to premise such a motion—and, indeed, to outpace this

litigation. Its actions simply are not consistent with an earnest desire to expedite these proceedings; to the contrary, Select Retrieval has effectively acquiesced in an informal stay of this case for most of the period that it has been pending..

Finally, it is clear that a stay would reduce the burden on the parties and the Court, particularly now that the only remaining alleged infringers are Adobe customers subject to indemnification by Adobe. Instead of defending its products in piecemeal fashion, and having to waste time and money seeking to intervene in various infringement actions around the country, Adobe can present a streamlined defense of its product that will bear fruit in all of the actions against its customers, whether it wins or loses. True, as Select Retrieval rightly points out, a judgment in the declaratory action will not leave this Court without work to do here; all of the issues regarding the alleged infringement will not be resolved. At a minimum, damages would have to be determined as to the customers; Select Retrieval further notes that, to the extent Adobe is not the sole supplier of the allegedly infringing technology for the entire period of the alleged infringement, fact discovery pertaining to liability may still be required. Nevertheless, the burden on the parties will be reduced if their efforts can be focused rather than disparate, as Select Retrieval apparently conceded when it consented to an MDL last year. When all relevant factors are considered, Adobe has met its burden of showing that a stay is warranted.

As additional support for a stay, Adobe relies on the so-called customer suit exception, and although the Court concludes that a stay is independently warranted, it agrees that that doctrine also weighs in favor of a stay. "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011); *see also Trippe Mfg. Co.*, 46 F.3d at 629 (affirming

dismissal of first-filed declaratory judgment claim to discourage litigation duplicative of later-filed infringement claim and explaining that Seventh Circuit "does not rigidly adhere to" a first-to-file rule.). The exception is rooted in the premise that a manufacturer is the true defendant in a patent infringement action because "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (quoting *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1997)). The "guiding principles" of the doctrine are efficiency and judicial economy. *See Spread Spectrum Screening LLC,* 657 F.3d at 1357 (citing *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed.Cir. 2006)).

The Court agrees with Adobe that the customer suit doctrine is implicated here because Adobe's status as supplier of the offending technology gives it a stake akin to a defendant; indeed, that is essentially why intervention is appropriate. Select Retrieval argues that because Adobe is not the sole supplier of the allegedly infringing technology, this suit should not be held up in favor of the declaratory judgment action. However, it is clear from the record that the remaining defendants believe their allegedly infringing practices result from the use of technology purchased from Adobe and used as directed; moreover, the Court is not persuaded that a stay would be warranted only if Adobe supplied 100% of the infringing technology. Adobe's declaratory judgment action will adjudicate the validity of the '617 patent, and that decision will resonate in this case regardless of whether other suppliers are implicated.

\* \* \*

For the reasons set forth above, the Court grants Adobe's motions to intervene and to stay. The parties shall jointly file a status report every 90 days to apprise the Court of the

progress of the declaratory judgment action, with the first such report due 30 days from entry of this order. Responsibility for preparing and filing all such status reports will lay with Adobe, the party that sought the stay.

Date: December 13, 2013

John J. Tharp, Jr.
United States District Judge